**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| I.G.,<br><br>Plaintiff,<br><br>v.<br><br>Motel 6 Operating LP, *et al.*,<br><br>Defendants. | No. CV-25-03836-PHX-JJT<br><br>**ORDER** |

At issue is Defendants Motel 6 Operating L.P. and G6 Hospitality LLC's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 17, MTD), to which Plaintiff I.G. filed a Response (Doc. 19, Resp.), and Defendants filed a Reply (Doc. 20, Reply) and Notices of Supplemental Authority (Docs. 21–23). The parties did not request oral argument on the Motion, and the Court finds it appropriate to resolve the Motion without oral argument. LRCiv 7.2(f).

## I. BACKGROUND

In the Second Amended Complaint (Doc. 14, SAC), the operative pleading, Plaintiff alleges the following facts. Plaintiff was born in 2000, and between 2014 and 2018, when Plaintiff was still a minor, she was sex trafficked at a hotel operated by Defendants in Phoenix, Arizona. Specifically, the trafficker rented a room for Plaintiff at the hotel multiple times per month, and Plaintiff stayed for several days at a time to perform sexual acts with numerous sex buyers per day. (SAC ¶¶ 19, 20, 24, 76.) The trafficker waited in his vehicle to surveil the room from the hotel parking lot, and after each sex buyer left the

room, the trafficker briefly went to the room to collect the money paid to Plaintiff. (SAC ¶¶ 22, 25.) Plaintiff frequently requested a large number of towels from the hotel, and the room contained items including drugs, drug paraphernalia, condoms, and lubricants, all of which were "in plain sight of [the hotel's] housekeeping staff." (SAC ¶¶ 27, 76(d).) Plaintiff's trafficker also used the hotel's Wi-Fi service to conduct his trafficking business. (SAC ¶ 64.) Plaintiff and her trafficker frequently had verbal and physical altercations and the trafficker's physical and verbal abuse of Plaintiff was "at times in plain sight and earshot" of hotel staff. (SAC ¶¶ 28, 76(i).) Moreover, Plaintiff claims that, "[d]uring the period of time that Plaintiff was trafficked at the subject hotel, it was visibly obvious that she was a minor." (SAC ¶ 29.)

In the SAC, Plaintiff alleges, in repetitive and at times conclusory fashion, that because Defendants repeatedly rented rooms to Plaintiff's trafficker through direct interaction with him when Defendants knew or should have known the trafficker was engaged in the sex trafficking of Plaintiff at the hotel, Defendants advanced the sex trafficking operation and were motivated by profit from renting rooms and providing Wi-Fi service to the trafficker.[1] (SAC ¶¶ 45, 62–80.) Based on these allegations, Plaintiff brings three claims against Defendants, namely, (1) for violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) (TVPRA); (2) for violation of the Child Abuse Victims Rights Act, 18 U.S.C. § 2255 (CAVRA); and (3) for negligence, gross negligence, and recklessness under state law. (SAC ¶¶ 52–92.) Defendants now move to dismiss all the claims against them under Federal Rule of Civil Procedure 12(b)(6).

[1] In their Motion to Dismiss, Defendants state that Plaintiff's counsel has used the same allegations in "at least 13 nearly identical complaints in jurisdictions across the country." (MTD at 2.) Still, the Court must take non-conclusory allegations in a complaint as true and construe them in the light most favorable to the plaintiff at the motion to dismiss stage. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Moreover, the Court must rely on Federal Rule of Civil Procedure 11's requirement that, among other things, "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The Court commends the parties for conferring in good faith regarding the allegations in Plaintiff's prior pleading, the First Amended Complaint, and for Defendants' stipulation to Plaintiff's filing of the SAC. (Doc. 12; *see* Doc. 8.)

## II. LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

. . .

. . .

. . .

## III. ANALYSIS

### A. TVPRA Claim

In the TVPRA, Congress provided that a person who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means" a victim—or a person who "benefits financially or by receiving anything of value, from participation in a venture which has engaged" in one of these acts—is subject to criminal penalties if the person knew "that means of force, threats of force, fraud, or coercion . . . will be used to cause the [victim] to engage in a commercial sex act, or that the [victim] has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). Congress also created a civil remedy for victims in the TVPRA, namely, "an individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from *participation in a venture* which that person *knew or should have known* has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a) (emphasis added). Plaintiff, as a sex trafficking victim, brings her claim against Defendants on a theory that they were beneficiaries from participation in a venture that Defendants knew or should have known was engaged in sex trafficking under § 1595(a). (SAC ¶¶ 57–58.)

Defendants advance two arguments for the dismissal of Plaintiff's TVPRA claim. First, Defendants contend that Plaintiff does not allege sufficient facts from which the Court can plausibly infer that Defendants participated in a venture (from which they benefitted) as contemplated by the statute. (MTD at 9–13.) And second, Defendants argue Plaintiff's allegations are insufficient to show Defendants knew or should have known the venture was engaged in sex trafficking. (MTD at 13–16.)

#### 1. Participation in a Venture

In a separate case in which this Court resolved two defendants' motion for summary judgment earlier this year—which decision Defendants here cite in a Notice of Supplemental Authority (Doc. 21)—the Court collected cases to discuss the approach of

courts around the country in answering the question of what constitutes "participation in a venture" under § 1595(a). *D.H. v. Scottsdale Inns LLC*, No. CV-23-00759-PHX-JJT, 2026 WL 1328170, at *7–11 (D. Ariz. May 13, 2026). The Court will not repeat that analysis in its entirety here and will instead summarize by pointing out that different courts have taken different approaches to the question. For example, in the Seventh Circuit and some district courts in the Sixth and Ninth Circuits, courts have concluded that, in this context, § 1591 sets the upper limits of § 1595(a) such that "the civil remedy does not demand more of the plaintiff than a criminal prosecution demands of the government." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023); *see also M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-00849, 2025 WL 2696500, at *17 (S.D. Ohio Sept. 22, 2025) ("*M.A. II*"); *K.R.D. v. Hilton Worldwide Holdings Inc.*, 798 F. Supp. 3d 1082, 1094 (N.D. Cal. 2025) (cited with approval in the unpublished Ninth Circuit case *Croft v. Dolan*, No. 24-6150, 2025 WL 3720844, at *3 (9th Cir. Dec. 23, 2025)). Accordingly, to satisfy the element of "participation in a venture," a plaintiff need not show the defendant's direct participation in the sex trafficking and must show only that the defendant provided "culpable assistance" by demonstrating "a continuous business relationship" between the defendant and the trafficker. *G.G.*, 76 F.4th at 559 (citations omitted). That is, where a defendant "provides assistance, support, or facilitation to the trafficker through such a continuous business relationship, a court or jury may infer that the participant and trafficker have a 'tacit agreement' that is sufficient for 'participation' under Section 1595." *Id.* (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970–71 (S.D. Ohio 2019) ("*M.A. I*")). Courts following this standard have thus found that providing commercial services to traffickers while having actual or constructive knowledge of the trafficking activities can satisfy the "participation in a venture" element in § 1595(a).

By contrast, in the Eleventh Circuit, D.C. Circuit, and other district courts in the Ninth Circuit, courts have required more. The Eleventh Circuit has defined a venture in this context as "a common undertaking or enterprise involving risk and potential profit." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). Applying that definition,

that court has concluded that "[m]erely renting a hotel room to a trafficker with actual or constructive knowledge of his trafficking does not constitute 'participation in a venture.'" *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1269 (11th Cir. 2026). "To be liable under § 1595, defendants must take part in a common enterprise to the extent that they share legal risks and potential profits with traffickers." *Id.* at 1268; *see also Doe 1 v. Apple Inc.*, 96 F.4th 403, 415–16 (D.C. Cir. 2024); *A.B. v. Interstate Mgmt. Co., LLC*, 746 F. Supp. 3d 997, 1006 (D. Or. 2024).

To the Court's knowledge, no authority binding on this Court yet exists as to the definition of "participation in a venture" as used in § 1595(a), and the parties do not cite any either. At this juncture, the Court finds the reasoning of the Seventh Circuit in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559–60 (7th Cir. 2023), to be persuasive in this regard, and the Court will apply the standard elucidated in that case to resolve the present Motion to Dismiss. Therefore, with respect to this element, "[t]o survive a motion to dismiss, all that is necessary is for a plaintiff to allege . . . a 'continuous business relationship' [between the defendant and the trafficker], which gives rise to an inference, drawn in the plaintiff's favor, that the civil defendant facilitated the venture's success." *Id.* at 560.

Here, as noted *supra*, Plaintiff alleges she was recognizably a minor dressed in sexually explicit clothing when the trafficker rented a room at the subject hotel for her multiple times per month, which room rental included the hotel's Wi-Fi service and a continual supply of towels the hotel provided to Plaintiff upon her requests, and Plaintiff stayed for several days at a time to perform sexual acts with numerous sex buyers per day. (SAC ¶¶ 19, 20, 24, 27, 29, 64, 76(a).) "The subject hotel was structured such that hotel room doors could be viewed from the hotel parking lot," and the trafficker waited in his vehicle to surveil the room from the parking lot. (SAC ¶¶ 21–22.) After each sex buyer left the room, the trafficker briefly went to the room to collect the money paid to Plaintiff. (SAC ¶ 25.) The trafficker "had direct interaction with employee(s) and staff" of the subject hotel and "took proceeds derived from the sex trafficking occurring [at the subject hotel] to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was

being trafficked there." (SAC ¶¶ 63, 66.) "The modus operandi of the trafficker(s) was to renew the room(s) daily." (SAC ¶ 72.) Moreover, Plaintiff's trafficker used the hotel's Wi-Fi service to conduct his trafficking business. (SAC ¶ 64.) Taken together, these allegations are sufficient at the pleading stage to show a continuous business relationship between the trafficker and subject hotel and raise the plausible inference that Defendants' hotel facilitated the success of the venture.

**2. Knowledge of Sex Trafficking**

The TVPRA prohibits sex trafficking in the form of causing a person to engage in a commercial sex act by "means of force, threats of force, fraud, [or] coercion," or causing a person who "has not attained the age of 18 years" to engage in a commercial sex act. 18 U.S.C. § 1591(a)(2). With regard to whether a defendant knew or should have known a venture was engaged in sex trafficking, in the Ninth Circuit, the *mens rea* § 1595(a) imposes is a negligence standard because "the phrase knew or should have known usually connotes negligence. And negligence is a less culpable mental state than actual knowledge or recklessness." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022) ("*Ratha I*"). Under the Ninth Circuit's guidance in *Ratha I*, district courts have held that "a plaintiff may not rely solely on general allegations that a defendant was aware of sex trafficking to establish actual or constructive knowledge of specific instances of sex trafficking." *S.B.C. v. Six Continents Hotels, Inc.*, 800 F. Supp. 3d 1139, 1143 (W.D. Wash. 2025); *see also Ratha I*, 35 F.4th at 1177. "Rather, a plaintiff must plead facts establishing that a defendant knew or should have known that the plaintiff was being trafficked or regarding a specific trafficking enterprise." *S.B.C.*, 800 F. Supp. 3d at 1143.

A number of the allegations the Court cited *supra* contribute to the plausible inference that Defendants knew or should have known the venture was sex trafficking Plaintiff. To begin with, Plaintiff alleges she was sex trafficked at the subject hotel beginning at the age of 14, and "[d]uring the period of time that Plaintiff was trafficked at the subject hotel, it was visibly obvious that she was a minor" who was "dressed in sexually explicit clothing." (SAC ¶¶ 17, 29, 76(b).) This by itself is sufficient under the TVPRA to

raise the plausible inference that Defendants knew or should have known that sex trafficking conduct was taking place at the hotel, not simply sex work. Plaintiff also pleads facts related to the trafficker's means of force, threats of force, or coercion in causing Plaintiff to engage in commercial sex, including that Plaintiff and her trafficker frequently had verbal and physical altercations and the trafficker's physical and verbal abuse of Plaintiff was "at times in plain sight and earshot" of hotel staff. (SAC ¶¶ 28, 76(i).) While this allegation is not by itself sufficient to show the requisite force or coercion to differentiate sex trafficking from sex work, Plaintiff has adequately alleged she was recognizably a minor when she was sex trafficked, which is sufficient under the TVPRA.

With regard to the required *mens rea*, Plaintiff's allegations again include that the trafficker rented a room for Plaintiff at the hotel multiple times per month and Plaintiff stayed for several days at a time to perform sexual acts with numerous sex buyers per day (SAC ¶¶ 19, 20, 24, 76); there was "constant foot traffic of sex buyers to the [trafficker's] rented room to have sex" with Plaintiff (SAC ¶¶ 76(a), 78); the trafficker waited in his vehicle to surveil the room from the hotel parking lot, and after each sex buyer left the room, the trafficker briefly went to the room to collect the money paid to Plaintiff (SAC ¶¶ 22, 25); both the trafficker and Plaintiff had direct interaction with employees and staff (SAC ¶ 66); Plaintiff frequently requested a large number of towels from the hotel, and the room contained items including drugs, drug paraphernalia, condoms, and lubricants, all of which were "in plain sight of [the hotel's] housekeeping staff" (SAC ¶¶ 27, 76(d)); and Plaintiff—recognizably a minor—walked around hotel grounds "with visible bruising, malnourished, and in sexually explicit clothing" (SAC ¶¶ 17, 29, 76(b)). From these allegations taken together, the Court can plausibly infer at least that Defendants subjectively should have known that Plaintiff was being sex trafficked as a minor.

Because Plaintiff alleges sufficient facts to state a TVPRA claim, the Court will deny Defendant's request to dismiss Count 1 of the SAC.

. . .

. . .

**B. CAVRA Claim**

In Count 2 of the SAC, Plaintiff brings a claim for damages under CAVRA, 18 U.S.C. § 2255(a), which provides that "[a]ny person who, while a minor, was a victim of section … 1591 … of this title" shall recover damages. As Defendants argue (MTD at 16–17), Plaintiff has not shown she was a victim of § 1591, nor could she in this civil action, since § 1591 is a statute providing for criminal penalties. Plaintiff's TVPRA claim in this action is brought under § 1595, which provides a civil cause of action, not § 1591, which is a criminal statute. Indeed, Plaintiff states as much in the SAC. (SAC ¶ 58.) Therefore, by the plain language of § 2255(a), Plaintiff has not and cannot state a CAVRA claim here, and the Court will dismiss Count 2 with prejudice.

**C. State Law Tort Claims**

Finally, Plaintiff brings state law claims for negligence, gross negligence, and recklessness in Count 3. In their Motion, Defendants point out that Arizona has set a two-year statute of limitations period from the time the claim is discoverable for personal injury claims such as these. (MTD (citing A.R.S. § 12-542 & *Pounders v. Enserch E & C, Inc.*, 306 P.3d 9, 11 (Ariz. 2013)).) According to Plaintiff's allegations, the conduct at issue here took place between 2014 and 2018, and thus the limitations period for these claims has long passed. Moreover, in the Response, Plaintiff does not contest Defendant's request for the Court to dismiss Count 3, which the Court may deem as consent for its dismissal. *See* LRCiv 7.2(i). Accordingly, the Court will dismiss Count 3 with prejudice.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 17). Counts 2 and 3 of the Second Amended Complaint (Doc. 14) are dismissed with prejudice, but Count 1 for violation of the TVPRA remains pending. Defendants shall answer Count 1 of the Second

Amended Complaint within the time set forth in the Federal Rules of Civil Procedure. The Court will set a case management conference by separate Order.

Dated this 10th day of September, 2026.

Honorable John J. Tuchi
United States District Judge